Argued June 26, decided July 8, rehearing denied July 29, 1913.

# BENSON v. MURTON.

(133 Pac. 340: 133 Pac. 1189.)

**Fraud—Actions—Evidence—Admissibility.**

1.   Where the parties have settled by agreement a transaction as to which certain false representations were made by the defendant, evidence of those misrepresentations is not admissible as a basis for punitive damages in an action for other misrepresentations.

**Trusts—Misrepresentations—Persons Liable.**

2.   In an action for fraudulent misrepresentations against one who took title to real estate in trust for the plaintiff and others, the defendant is not liable for fraud committed by two of the beneficiaries of the trust against the others in receiving a rebate from the seller of the property after the trust had been terminated by the trustee's conveyance of the property to the corporation designated, and he had no further connection with the transaction.

**Trusts—Fraud—Evidence—Admissibility.**

3.   Evidence of the acts and declarations of the beneficiaries in relation to their receiving a rebate is not admissible in such an action against the trustee for fraudulent misrepresentations.

**Trusts—Misrepresentations—Evidence—Admissibility.**

4.   In such an action, evidence that the transactions of the trustee had been settled by agreement should have been admitted.

**Appeal and Error—Review—Presumptions.**

5.   Where former verdicts have been previously set aside, it will be presumed that they were set aside for good cause.

**Appeal and Error—Review—Verdicts.**

6.   This court will not be controlled by a verdict, if there was error in the trial that contributed to it.

**Fraud—Actions—Damages.**

7.   In an action for damages from fraudulent representations in the sale of real estate, damages cannot be claimed on a prospective loss on the final outcome of the venture.

[As to the measure of damages for misrepresentation in selling real estate, see note in 123 Am. St. Rep. 776.]

**Evidence—Opinion Evidence—Value.**

8.   In an action for damages from fraud in the sale of real estate, plaintiff's testimony that the land was not worth 15 cents is not a statement of fact, but a conclusion.

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. JUSTICE EAKIN.

This is an action by Chas. G. Benson, against C. C. Murton to recover damages for false representations; the circumstances being as follows: McNair & Mossman, a real estate firm of Portland, had negotiated with W. W. Fawk for the purchase of a farm of 322 acres, in Polk County, for and on behalf of J. Syd McNair, C. C. Page, Chas. G. Benson, and E. P. Dosch, which they desired to place in the hands of the Title & Trust Company to subdivide and sell for them. The title to the land was to be taken in the name of defendant C. C. Murton, who became the nominal purchaser, signed the contract with Fawk, and gave his notes for the unpaid balance of the purchase price with the understanding that, when arrangements were completed for handling it, he was to deed it to the Title & Trust Company. On July 20, 1910, the land was conveyed by deed directly from Fawk and wife to the Title & Trust Company. McNair, Dosch, Page and Benson financed it and were to share in the profits equally. Negotiations therefor were commenced on the 15th day of April, 1910, and the contract was signed by Murton. The other arrangements in regard thereto rested in parol until about the 5th day of September, when the agreements were reduced to writing and antedated as of April 26th, in which it was recited that the cash portion of the purchase price, $4,000, was paid in equal proportions by McNair, Dosch, Benson and Page, called the beneficiaries. C. C. Murton on August 2, 1910, for the alleged consideration of $5,650, assigned to the beneficiaries all of his right, title and interest therein and to the money to be derived therefrom. The unpaid balance of the purchase price was $14,500, evidenced by the notes of Murton, one for $4,500 and

one for $10,000, dated May 21st, further reciting the
terms of the trust in the Title & Trust Company and
the manner of the disposition of the land. As a part
of the agreement the Title & Trust Company signed a
statement of the trust and accepted its terms. It is
also stated that the beneficiaries assumed to pay the
said purchase price notes; that the purchase price of
the land was $18,500, of which $4,000 had been paid.
The purchase and its financing was planned and con-
summated by McNair and Mossman. Dosch and Ben-
son became parties thereto, signed the agreement, and
made payments upon the representations of McNair.
On August 2, 1910, pursuant to an agreement between
Fawk and Murton and the Title & Trust Company,
said agreement being dated July 25, 1910, Murton
formally assigned and transferred all his interest in
the land and transaction to the beneficiaries; and at
the same date executed another assignment to the same
effect reciting that it was executed in consideration of
$5,650 paid to him by McNair, Dosch, Benson, and
Page. At the trial it was conceded that the defendant
did not receive the $5,650, nor any part thereof, as a
consideration for the assignment; that of the alleged
purchase price of $18,500 it is conceded that $1,500,
although evidenced by notes and payments, was re-
turned to McNair and Mossman as a bonus or rebate
on the price, without the knowledge or consent of
Benson or of Dosch, and that the sum of $5,650, cer-
tified by Murton to have been paid to him for the as-
signment, was added to the purchase price, making
$23,250, the price for which Benson and Dosch were
liable; that the $4,000 recited in the contract to have
been paid to Fawk was the money paid by Benson and
Dosch, and that McNair and Page paid nothing. In
the trial of the case the court, after instructing the

jury as to their consideration of compensatory damages, instructed them further as follows:

"In addition to that if you should find that these people had an understanding or agreement by which they were to defraud people, of which this plaintiff was one, in addition to compensatory damages, you would have the right, if Murton was a party to a conspiracy of the kind I have indicated to you, to award the plaintiff such a sum as exemplary as would warn the defendant and all other people from doing things of this kind in the future."

Verdict was rendered for the plaintiff for $500 actual damages and $750 exemplary damages. From a judgment thereon, the defendant appeals.      REVERSED.

For appellant there was a brief over the names of *M. George S. Shepherd* and *Mr. Edward J. Clark,* with an oral argument by *Mr. Shepherd.*

For respondent there was a brief, with oral arguments by *Mr. Cicero M. Idleman* and *Mr. B. M. Benson.*

MR. JUSTICE EAKIN delivered the opinion of the court.

There are four principal exceptions relied upon on this appeal: (1) Error in refusal of the court to admit evidence of the settlement of December 5, 1910; (2) an exception to the instruction of the court that the jury might find against the defendant for exemplary damages; (3) the exception to the admission of the evidence of the conspiracy of McNair and Page; and (4) the refusal of the court to grant him nonsuit at the close of plaintiff's testimony or to instruct for a verdict in favor of the defendant at the close of the case.

1, 2. Plaintiff claims that he was defrauded to the amount of one fourth of the $5,650 mentioned in Murton's receipt, alleged to have been paid to Murton for

the assignment, and also by the fact that McNair and
Page did not pay any of the first payments on the land.
He says he discovered this on December 1st, and that
he had a settlement on December 5, 1910, with McNair
in regard to these two items, in which the $5,650 item
was entirely eliminated, and on that date as Benson
and Dosch had already paid $4,000, and as McNair and
Page had not paid a corresponding amount, they paid
the $4,500 Murton note, which was due January 1, 1911,
amounting to $4,935; and thus these two items of dam-
ages were fully and satisfactorily adjusted.  Plaintiff
is not complaining because there was to be $5,650 paid
to Murton, increasing the price of the land that much.
He is complaining only that McNair and Page, by
means of that representation, were to get a profit equal
to half of that amount from plaintiff and Dosch.   If
that scheme had been carried out, that would have
been the amount of their damage; but that item has
been adjusted and the price to which plaintiff was con-
senting has been reduced accordingly.   He is not dam-
aged in any amount on account of said transaction,
and it has no place in this trial.   His contention that
it was an element inducing him to enter into the trans-
action, and that he should recover on that account,
might be evidence and  argument why he should be
allowed to rescind the agreement, but he is not com-
plaining that the investment will be a loss to him.   His
remedy might have been clear for a rescission if taken
in time.   What he is seeking now as to this transaction
of Murton's is not compensation, as plaintiff obtained
satisfaction in the settlement of December 5th, but to
use the evidence of it as the basis of punitive damages;
and it is incompetent for that purpose unless he were
to recover compensatory damages for that item, with
proof of malice.   Later plaintiff found out that Fawk
had returned to McNair $1,500 of the amount paid by

McNair on the $4,500 note as a bonus to him. This is the principal damage of which he complains now, and it seems to be the only item of real damage suffered; but there is not any evidence that defendant here had any connection with that transaction.

It is conceded that the plaintiff did not see Murton nor have any direct communication with him until long after this transaction other than that he saw his receipt for the $5,650. Murton testifies that he was a merchant.in McMinnville; that Mossman asked him if he would take the title to the Fawk land at $58 an acre and hold it for them until they could form a syndicate, he to be paid $250 for his services; and that he agreed to do so. This was for the convenience of holding the title in a trustee rather than in several persons. He at no time had any individual interest in the purchase in the syndicate, or profits to be realized therefrom, nor was he to put any money into the land. The papers were sent to him and he signed them and the notes for the unpaid price of $14,500. Four thousand dollars had already been paid. The only act reflecting on Murton's motives was in signing the receipt. The beneficiaries are mentioned in that receipt, and it was shown to them. Whether he knew that plaintiff and Dosch were ignorant of the fact that that amount was not to be paid does not appear, but the fact is they were ignorant of it, and McNair used the receipt fraudulently against plaintiff and Dosch. However, it is not shown that the defendant knew or participated in that fraud other than in signing the receipt. Neither is it shown that he signed the receipt for any fraudulent purpose, nor that he knew that it was to be used for such a purpose against the plaintiff or anyone; but, if such an inference could be drawn, it was purged by the settlement of December 5th, and plaintiff has no remedy thereon now.

It is not shown that defendant had any knowledge that the actual price of the land was to be less than $18,500, as mentioned in the contract of sale with Fawk, and the payment of $4,000 prior to the execution of the notes for $14,500 is recited in the agreement. Therefore, there is not a word in the evidence to connect Murton with the rebate on the purchase price, which occurred only in December, long after Murton had been released from the payment of the notes, the trust had been transferred by him, and his connection with the venture had ceased. It is shown by plaintiff that the rebate on the price was made out of the payment of the $4,500 note signed by Murton, so that the $4,000 cash payment recited in the agreement must have been actually made before the deed was executed. Possibly as against McNair plaintiff might have been entitled to damages in the amount of one fourth of the $1,500 rebate. If this were a suit to rescind the contract, plaintiff might be entitled to a refund of the money paid as interest, expenses of the survey, taxes or improvements made by him, but these items counted on in the complaint are the legitimate expenses of the venture, and were not occasioned by any fraud. From the evidence plaintiff seems to consider that the investment is a good one, and is not seeking to rescind. He is only seeking to put himself on an equal footing with the other investors, with punitive damages against the guilty ones.

There is no evidence that Murton was a party to a conspiracy with McNair and Page to obtain a rebate on the price of the land without the knowledge of plaintiff, nor did anything in aid thereof, nor had knowledge of it, but was entirely eliminated from the transaction in August, long before the repayment was made.

3, 4. Evidence of what McNair did or said in relation thereto did not involve Murton, and was incom-

petent, and evidence of the settlement of December 5th relating to the items of the $5,650 and McNair and Page's failure to make their first payment of $2,000 each, which were the burden of plaintiff's evidence to show fraud, was properly admitted as disposing of those items.

As plaintiff has suffered no loss by reason of any act of defendant, the motion for a directed verdict should have been allowed. The judgment of the Circuit Court is reversed and the cause will be remanded, with directions to dismiss the action.          REVERSED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE McNARY concur.


Denied July 29, 1913.

ON PETITION FOR REHEARING.

(133 Pac. 1189.)

MR. JUSTICE EAKIN delivered the opinion of the court.

The principal ground for the petition for rehearing is based on the holding of the opinion that Murton was not shown to be a party to the fraud by which the $1,500 was added to the actual price of the land and returned to McNair, by which McNair and Page alone profited; second, that the opinion holds that plaintiff suffered no damage by reason of any fraud of defendant; and, third, especially that this court assumes to decide questions of fact passed upon by the jury.

5. We will consider the last point first. We find nothing in the record as to the former jury trials of this case, only as stated in plaintiff's brief and as mentioned in the oral argument; but, assuming that it be the case, we must also assume that former verdicts were set aside for good cause, that we have only to do

with the present verdict uninfluenced by prior ones, and that we are not to be controlled by it, if there was error in the trial that contributed to the verdict.

As to the damages suffered by plaintiff, the only special damages sufficiently alleged to admit of proof is the payment of interest, expenses of the survey of the land, and taxes paid, which items were not incurred in consequence of the fraud alleged, but are legitimate items of expense of the undertaking. Loss of time would be an element of special damages; but, the facts not being specifically alleged, it cannot be considered.

6. The only other item of damage is that plaintiff has suffered loss in the sum of $5,000. This allegation will include any items of general damages. The only item of general damages that can be considered was the plaintiff's share of the $1,500 rebate on the purchase price. Actual damages cannot be based on a possible foreclosure of plaintiff's interest, or prospective loss on the final outcome of the venture. If plaintiff feared such a result, his remedy to rescind was ample protection.

7, 8. Plaintiff's testimony that his interest was not worth 15 cents is not a statement of a fact, but a mere conclusion, and he testifies that the land is worth $75 an acre, being $7,000 more than it cost; so that, if defendant was not knowingly a party to the deception as to the actual price being $18,500, and of the refunding of the $1,500, there was no proof of damage with which defendant was chargeable. On April 15th Murton signed the contract for the purchase of the land for the price of $18,500, on May 21st gave his notes for the unpaid part of that amount, and on August 2d severed his connection with the transaction.

Plaintiff cites McNair's testimony, wherein it is asked: "Q. Did he [Murton] know anything about these representations?" He answered: "Well, I

think he did''—the misrepresentations about the $5,650 claimed to have been paid to Murton on his assignment being the subject of inquiry, and the answer of the witness is not evidence as to Murton's knowledge of the rebate in price. We are not passing on the proof, nor the extent of the fraud on the part of McNair and Page. No doubt, as appears from the evidence, there was ample ground to charge them with it, and that actual damage resulted therefrom; but the defendant must not suffer for fraud or damage with which he is not connected.

The petition is denied.

REVERSED: REHEARING DENIED.